## UTLEY v. STATE.

### Opinion delivered March 13, 1922.

FALSE PRETENSES—GOOD FAITH AS DEFENSE—INSTRUCTION.—As the gravamen of the offense of false pretenses is the intent to defraud, it was error, in a prosecution for false pretenses in selling property represented to be unincumbered when in fact the title was reserved in another until the defendant . paid the purchase money, to give an instruction which virtually excluded the defense that defendant in good faith believed that his title was clear.

Appeal from Craighead Circuit Court, Jonesboro District; *R. E. L. Johnson*, Judge; reversed.

Appellant *pro se.*

The court erred in refusing to give instruction 9 and 10, to the effect that where a party does not rely upon statements, or relies upon a separate investigation, he cannot be heard to complain of false pretense. 42 Ark. 131; 49 Mo. 542; 141 Ark. 633; 25 C. J. 599.

Instruction No. 10, given by the court, was manifestly erroneous, for it withdrew from the jury every defense the defendant could have had, except that of a full written receipt or satisfaction of the note or an adjustment by litigation. *Murrey* v. *State*, 150 Ark. 461; 25 Corpus Juris, 602, p. 31, note 7.

Instruction No. 8 should have been given, for the defendant had such interest in the property as he might convey, which, taken with his claim of credit, ought to have been submitted to the jury. 92 Ark. 254; 92 Ark. 530.

There was a variance between the allegations of the indictment and the proof. 37 Ark. 443; 37 Ark. 445. The indictment having specifically described the check, the proof should have been equally specific. 60 Ark. 143; 71 Ark. 418; 84 Ark. 286; 85 Ark. 501; 62 Ark. 538; 29 Ark. 68; 70 Ark. 30; *Clemons* v. *State*, 150 Ark. 425. The proof must correspond with and support the averment. 25 C. J. 638, 875-2, note 46; 120 Ark. 237; 70 Ark. 30.; 112 Ga. 226; 57 S. W. 813; 152 N. W. 378.

*J. S. Utley,* Attorney General; *Elbert Godwin* and
*W. T. Hammock,* Assistants, for appellee.

Where an offense is committed partly in one county
and partly in another, the jurisdiction is in either county.
C. & M. Digest, § 2875; Wharton's Criminal Law, vol. 2
(11th Ed.) sec. 1473.

Instruction No. 10, requested by the defendant, was
not the law and the court was right in refusing it.
Wharton's Crim. Law, vol. 2 (11th Ed.) § 1440; 59
Ark. 375.

It is not necessary that the false pretense should have
been the sole inducement to part with the property. 59
Ark. 375; Wharton's Crim. Law, § 1440.

Appellant cannot complain of the failure to submit
an issue where he requested no charge thereon.  89 Ark.
390; 95 Ark. 593; 75 Ark. 373; 77 Ark. 477; 86 Ark. 360;
104 Ark. 322.

The vendor of personal property reserving title to
same may recover it if any part of the purchase price
remains unpaid.  92 Ark. 598.

Representations to be fraudulent must be material.
12 Ga. App. 695; 78 S. E. 202.

Identification of a check is sufficient although it does
not correspond exactly with the one pleaded.  173 Mass.
541; 54 N. E. 353.

WOOD, J.  The appellant (defendant below) was con-
victed on an indictment which charged that he "did un-
lawfully, feloniously, designedly and with intent then
and there to defraud and cheat Joe Stevens, falsely rep-
resent and pretend that he was the owner of one black
horse and that same was not incumbered, whereas in
truth and in fact the title to said horse was in one G. W.
Culberhouse, all of which the said defendant then and
there knew, and knew that each of said pretenses was
false; by means and color of which said false pretenses,
he, the said H. T. Utley, induced the said Joe Stevens
to purchase said horse for the sum of one hundred-fifty
dollars,  *  *  *  *  *  *  *  and did then and there un-

lawfully, feloniously, designedly, intentionally, with intent then and there to defraud and cheat said Joe Stevens, obtain from the said Joe Stevens a bank check on the Bank of Truman, Truman, Arkansas, for the sum of one hundred-fifty dollars, payable to said H. T. Utley, of the value of one hundred-fifty dollars, the property of Joe Stevens," etc.

It was shown by the State that on February 8, 1920, the appellant executed a note to G. W. Culberhouse for the sum of $224. The note, among other things, contained the following provision: "This note evidences the balance due upon the purchase price of the following described property, to-wit: one black horse known as the 'Bowen horse;' one gray horse known as the 'Massey horse;' one set of double harness. It is hereby agreed and understood that title to the above described property shall be and remain in the payee herein until the purchase price thereof shall have been fully paid.

(Signed) "G. N. UTLEY.

"H. T. UTLEY."

Culberhouse, among other things, testified that he sold Utley two horses and a pair of harness; that one of the horses was a black horse. He took the note above mentioned in payment for the same. He never authorized Utley to sell the horses. He afterwards found the black horse in the possession of Joe Stevens, and got the horse back after a lawsuit with Stevens. Utley never paid for the horse.

Stevens testified that he bought from Utley a mare and a horse. The horse was black. He paid Utley by check on the Bank of Truman, which he supposed was cashed. The check came back to him canceled and endorsed by Utley. It was charged up to him. Witness stated that when he was negotiating for the purchase of the horse Utley said that he got the horse from Jim Bowen—that they were Jim Bowen horses. "I told him," said the witness, "I always made it a rule to ask if the stock was in the clear." He replied, "They are in

the clear.'' Culberhouse afterward replevied the black horse from witness. Witness bought on the statement of Utley that the horses were clear of incumbrance. Witness stated that the trade was made in Craighead County, but that he actually accepted the horses in Poinsett County. Witness stated that, after Culberhouse recovered the horse from witness, Utley had paid witness $50 and gave him a note for the balance of the purchase price, which witness accepted in payment of his claim.

The appellant testified that he had a contract for doing dirt work on a certain road, and bought a bunch of mules from Culberhouse for which he agreed to pay the sum of $100 per month. He sold one pair of these mules and turned the notes for the purchase money over to Culberhouse, and Culberhouse accepted the same in settlement for those mules. Witness was sick, and had to go to the hospital. While there, Culberhouse took all of his (Culberhouse's) mules back but one, which was crippled, and also took two mules that witness bought from Mr. Sells; that he gave witness no credit for them; that witness bought two wagons from Jonesboro Supply Company, for one of which he paid cash. A few days after witness got out of the hospital Culberhouse priced him some horses at $375, and said to witness that he (Culberhouse) owed witness the sum of $150 as balance on the stuff that he had taken from witness and sold, and he stated to witness that he would give witness credit for the $150 as part of the purchase price of the horses, and witness could execute his note to him for the balance of $225, which witness did. Culberhouse guaranteed that the horses were sound. Witness afterwards discovered that one of the horses was blind, and asked Culberhouse to take the team back at the same price. Culberhouse said he did not have time to fool with them, and asked witness to sell them to some loggers down there. Witness then advertised the horses for sale all over the neighborhood. Stevens bought them. Culberhouse brought suit for the horses. Witness told Stevens if he

lost the horses witness would pay him, and he did. This was settled before there was any indictment against witness. Culberhouse had no lien whatever on Sells' mules that he took from witness. Culberhouse also took harness belonging to witness for which witness had paid the sum of $50. On one other occasion witness had sold a team on which Culberhouse had a lien, and turned the note over to Culberhouse, and it was agreeable to him. Witness had no reason to believe that Culberhouse would object to his selling the horses after he had agreed to it. Witness heard that Culberhouse had sold the wagons which he had taken from witness at $110 each. On one of these wagons Culberhouse had a lien. In place of a crippled mule that witness had on which Culberhouse had a lien, Culberhouse took two mules from witness, for which witness had paid $350 cash about six months before.

Witness came out of the hospital in January, and did not have a chance to make investigation as to what property Culberhouse had taken from witness or what it had sold for. Witness stated that, after he discovered that one of the horses was blind, he told Culberhouse about it, and told him he must remedy it. Witness stated that when he executed the note to Culberhouse for $225 he knew that Culberhouse had got some stuff belonging to witness, but thought Culberhouse was telling the truth about it and doing the right thing about it. He knew that Culberhouse had title to the horse that witness sold Stevens, but Culberhouse told him he could sell it. Witness didn't know what the items were that Culberhouse took back, nor what they sold for.

Culberhouse, in rebuttal, denied the statements of Utley except as to the sale made of the two mules, and reiterated that, after Utley got out of the hospital, he and witness adjusted their matters and wound it all up, and he sold witness the horses and harness for $225. Witness further stated that he had not figured up what profit he made on the property that he had taken back from

Utley. He figured that he had lost considerable, but that he had not figured it up. He had taken back seven head of mules, and had not given witness credit for the $240 for the team. Witness was asked the following question: "You never gave him credit for the mules you took back but about $65 a head, and on that basis you figured you owed him $150?" Witness answered, "That is just exactly what he states to you, and that is about correct; and then he bought this span of horses, but he gave me a note for $225, and that wound the thing up."

Among other instructions the court, on its own motion, gave the following:

"No. 10. You are instructed that if a vendor of personal property retains title to said property in a note given at the time of the sale for the purchase price, then in that case title to said property remains in such vendor until said note is fully paid and satisfied in some legal manner, regardless of other financial transactions or disputes arising between the original vendor and vendee of said property."

The appellant offered a general objection to the giving of the above instruction and excepted to the ruling of the court in giving the instruction over his objection. The motion for a new trial contained thirty-one assignments of error. We do not find any prejudicial error in any of these except in the ruling of the court in giving the above instruction.

The court, on its own motion, instructed the jury that in order to convict the defendant they must find from the evidence that Joe Stevens was defrauded by the transaction; that Joe Stevens relied upon the statement as alleged in the indictment that said horse was not incumbered, and that said statement, if so made, was made with the intent to defraud. There was testimony in the record which entitled the appellant to have the issue submitted to the jury as to whether or not, on account of prior transactions between appellant and Culberhouse,

appellant in good faith believed that he was entitled to such credits on his note as would satisfy the same. The gravamen of the offense is the intent to defraud or cheat another by false pretenses or false representations, inducing another, by virtue of such fraud, to part with his property. Instruction No. 10 was calculated to cause the jury to believe that, if title to the property was in Culberhouse at the time the appellant made the alleged representation to Stevens that the property was clear, *i. e.,* free from incumbrance, and that the note had not actually been paid and canceled in some legal manner (without defining what the legal manner was), the appellant would be guilty, if his representations were in fact untrue, even though he did not intend thereby to perpetrate any fraud on Stevens, and even though he believed that he was entitled to credits against Culberhouse sufficient to offset and satisfy his claim against the appellant on the note.

This instruction, to say the least of it, was calculated to mislead the jury and to cause them to believe that the prior financial transactions or disputes that had arisen between Culberhouse and the appellant were not to be considered in determining the question of his intent, if the title to the horse was in fact in Culberhouse, and if the appellant had represented to the contrary. The court should not have given an instruction which virtually excluded appellant's defense that he in good faith believed that he, by prior transactions with Culberhouse, had in legal effect satisfied the note, and that he, in good faith, believed that his title to the property was clear.

By reason of the error indicated, the appellant did not have a fair trial. The judgment is therefore reversed, and the cause remanded for a new trial.